Vollum *v.* School Lane Apartments, Inc., Appellant.

Argued November 11, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Ralph S. Croskey,* with him *Croskey & Edwards,* for appellant.

*Philip Price,* with him *Christopher Branda, Jr.* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 4, 1955:

The defendant corporation, School Lane Apartments, owns and operates in Philadelphia an apartment house with an attractive entrance-vestibule constructed entirely of glass and framed in stainless steel. This vestibule, which resembles a large showcase, is rectangular in shape, measures about 7 by 5 feet and has two doors, one opening into the lobby of the building and the other conducting to the outside. On December 17, 1951, at about 8:30 in the morning, defendant's employes, because of a defect in the mechanism of the door check on the outer door, unhinged this door and stood it against the doorless 5-foot-wide glass wall of the vestibule. At about 11:45 that morning, the plaintiff Marion Y. Vollum, a tenant in the defendant's apartment house, passed into the showcase-

entrance on her way out of the building when the hinge-less door, weighing from 200 to 300 pounds, fell upon her inflicting serious injuries for which a jury in the resulting lawsuit rendered a verdict in her favor in the sum of $9500. The defendant company's motion for a judgment n.o.v. was refused by the lower court and the case has come here on appeal.

In support of its argument for a reversal of the lower court's decision, the defendant argues that the plaintiff failed to prove any negligence for which it is responsible. The plaintiff called as her witness the maintenance supervisor of the building, Robert J. Krusen, who testified that the bottom of the involved door extended about one foot from the wall. In this position, defendant's counsel explains that the recumbent door and the upright wall formed a triangle with the door serving as the hypotenuse (7 feet), the wall as the perpendicular (6.93 feet), and the base constituting the distance between the lower edge of the door and the wall (1 ft.) ; and that, therefore, the defendant could not have been negligent because the law of physics and mathematics prevented the door from falling. Against this abstract theorization we have the concrete fact that the door *did* fall. Any theory not ballasted by realities will topple when struck by the logic of ponderable events.

While it is true that Krusen stated that the bottom of the door stood out one foot from the wall, he also said at another point in his testimony that the door was "flush with the building." A photograph introduced in evidence shows that the door had attached to it, at the center, a large, heavy, protruding steel handle which would keep the door from leaning cheek-by-jowl against the wall. Thus, even assuming the separating distance of one foot at the bottom, this handle with its buffering depth would hold the door

more or less vertically so that it would be subject to displacement by the slightest touch, or even by vibrations resulting from footsteps, or the opening and shutting of the other door. Nor does the fact that the door remained for some three hours without falling establish that it was correctly and securely leaned against the wall. It is common observation that an unsupported, standing object does not always fall immediately. The mysterious forces of nature cling to the *status quo* until the shifting of equilibrium (which may come about gradually from atmospheric pressure, currents of air or continuing vibrations) reaches inequality of balance, and then, the pole crashes, the steel fence falls, or the 300-pound door topples.

The legal situation in this case is one which calls upon the defendant to show that it used proper care in the face of circumstances which of themselves speak convincingly that without negligence the mishap would not have occurred. The defendant introduced no testimony to combat the natural inferences arising from the facts as presented by the plaintiff. The jury had the right to expect answers to the questions which naturally arose from the evidence:

1. Why did the defendant's employes stand the door on end, instead of on its lateral side, thus considerably reducing the possibility of capsizing?

2. Why was this unfastened object placed in the narrow vestibule, through which people were constantly passing, when it could just as easily have been put to rest outside where an untoward slipping or falling would not have endangered life and limb?

3. Why did the defendant not post the premises with warning signs so that tenants could have avoided the proximity of this instrumentality poised on the brink of an ever-present highly perilous fall?

The jury had the right, in considering these matters, to determine whether the defendant's failure to protect its tenants and invitees from an obvious danger did not in itself constitute the lack of due care it was required to exercise under the law.

Defendant's counsel argues that there was a burden of proof on the plaintiff to show that the "door was left in an insecure position," and that "it was physically possible for the door to have fallen on her without the intervention of some outside agency." The law does not impose such a burden. In *Skeen v. Stanley Co.*, 362 Pa. 174, 176, the patron of a theatre was injured when a bolt fell from overhead and struck her. The defendant there argued that the plaintiff was required to objectively prove that the defendant was negligent. This Court said: "A patron of the theatre is not charged with the responsibility of conducting an investigation of the theatre's ceiling before sitting under it and witnessing a performance. In the absence of an explanation to the contrary, it is reasonable to infer that the bolt was attached to some equipment in the theatre. The rebuttal of this natural inference was a duty the circumstances cast upon the defendant. For the absolving of the defendant from legal responsibility for an injury caused by the fall of this bolt on one of its patrons, *it is only fair to call upon the defendant to show that it exercised due care to prevent harm to its patrons.*" (Emphasis supplied)

Equally, in the case at bar, the jury could infer from all the circumstances that the defendant did not exercise due care when it placed the loose door in the entrance-vestibule and stood it up perpendicularly instead of resting it on a lateral side.

A case which parallels in principle the one at hand is *Palmer v. Miller N. Broad S. Co.*, 105 Pa. Super. Ct. 21, 24, where the child-plaintiff was injured

when a crate resting on a sidewalk, and placed there by the defendant, fell without the intervention of any known outside agency. The defendant there also argued that no active negligence on its part was shown. The Superior Court, in affirming the verdict for the plaintiff entered in the lower court, said: "Had the obstruction been properly placed or guarded, no accident would have happened in the ordinary course of events.

"The difficulty in defendant's case is that this crate was placed so that as the child played along side of it, it toppled over and fell. This is what constitutes the negligence complained of. *It was left in a dangerous position.* . . . A person placing an obstruction on the sidewalk which is likely to prove dangerous to a passerby may be held responsible to pay the damages occasioned by an injury that ensues and this is supported by numerous authorities . . ." (Emphasis supplied)

Judgment affirmed.