## Brown v. Popky

*Perry J. Shertz,* for plaintiff.

*Arthur Silverblatt,* for defendant.

*James P. Harris, Jr.,* and *Patrick J. Toole, Jr.,* for additional defendant.

PINOLA, P. J., April 5, 1963.—This action by the parents and two children was commenced by complaint filed on August 4, 1960. After an appearance was entered for defendant, the parties agreed that the claim of the parents be severed and indexed to October term, 1960, no. 1336½.

Defendant then filed a complaint against the parents, against Shelborne Corporation, and against Radio Corporation of America as additional defendants. All appeared by counsel, except Radio Corporation.

On November 16, 1960, by stipulation, counsel agreed that the action be discontinued as to Radio Corporation.

During the early part of 1962, plaintiffs' original counsel withdrew and present counsel took their places. On presentation of a petition by them, a rule was granted upon all parties to show cause why the discontinuance should not be stricken. Judge Lewis made the rule absolute in the action involving the minors but discharged it in the action by the parents.

Finally the matter came on for trial on December 5,

1962, before the writer and a jury. On December 7, the court, on motion of defendant, entered a nonsuit. We have before us a motion to lift the nonsuit.

Three questions are raised as follows:

I. Whether the trial judge erred in concluding, as a matter of law, that there was no negligence shown on the part of defendant under the law pertaining to landlord and tenant.

II. Whether the trial judge erred in refusing to permit plaintiffs to introduce the deposition of Edward Popky as substantive evidence of the facts contained therein.

III. Whether the trial judge erred in ruling that Edward Popky was not a person whose interest was adverse to plaintiffs, and, therefore, erred in refusing to permit the plaintiffs to call him as of cross-examination.

We are aware of the rule . . ."a judgment of nonsuit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor": Flagiello v. Crilly, 409 Pa. 389, 390.

And that in considering the lifting of a nonsuit, the evidence must be read . . . "in the light most favorable to the plaintiffs . . .": Davanti v. Hummell, 409 Pa. 28, 30.

Observing the rule, we find the facts as follows: Defendant, Charles Popky, is the owner of an apartment building located at 89 Carey Avenue, Wilkes-Barre, and on October 14, 1958, the date of the accident in question, plaintiffs occupied apartment no. 4, which was on the ground floor.

The building was built for school purposes and after acquiring the same, defendant undertook extensive renovations to convert it into an apartment building.

The work was done in the spring or early summer of 1957.

Edward Popky, son of defendant, is a licensed electrical contractor and he had charge of all of his father's real estate, consisting of 5 different buildings and containing about 60 apartments. He collected all the rents, and all complaints were made to him.

During the renovation new fir plywood flooring was laid over the existing pine flooring in the kitchen. The new floors were laid by carpenters who were hired and paid by defendant, who acted as his own general contractor, particularly with reference to the renovations in this particular building.

The carpenters who laid the flooring were working under the supervision of defendant and Edward, the son.

In January, 1962, measurements made by Edward indicated that there was a slight pitch in the floor of the kitchen occupied by plaintiffs from a wall into the kitchen. An electric range was located with its back against that wall. From measurements taken it appeared that the left rear leg of the stove was $\frac{3}{8}$ of an inch higher than the left front leg. The right rear leg was 9/16 of an inch higher than the right front leg. The pitch existed over a linear distance of about 20 inches. In addition to the pitch from the rear of the stove to the front, there was also a 3/16 of an inch difference between the right front leg of the stove and the left front leg.

Edward installed the stoves in the apartments. They were equipped with four leveling bolts, one under each leg. These bolts when turned would cause the stove to rise or be lowered. The stove was not fastened in any way to the floor.

When the stove was installed in the Brown apartment, naturally it required leveling and Edward personally levelled it by turning the bolts.

Edward indicated that he had had considerable experience with stoves of this type and that he had been called by persons to level their stoves. According to him, it was not unusual after the lapse of some time following the levelling of a stove for it to require re-leveling. Such need could be brought about if the stove were moved and not put back in exactly the same spot on the floor. In cleaning the stove, sometimes it would be moved. Mrs. Brown testified that repairs to the stove were made twice. On one occasion she was sure that it was not moved, but she did not know whether it was moved on the second occasion. The stove had been used by her for approximately six months before the day of the accident without any trouble.

The Browns moved into the apartment in April, 1958, and the accident happened on October 14, 1958. They have four children, ages approximately four, three, two, and six weeks. On the date of the accident Mr. Brown had finished his dinner and returned to work. Mrs. Brown undertook to wash the dishes and prepare the baby's formula and she sent the children into an adjoining room. She placed a gallon pot of water containing 12 bottles on one burner. In another pot she placed the nipples and caps for boiling. In a third pot she put water which was to be used for the formula.

While doing the dishes she was twice interrupted by her youngsters who came into the kitchen and on each occasion she sent them back into the living room. While she was engaged in putting certain articles into the cabinets, which were to the left of the sink in the kitchen, she heard a thump and a scream and upon turning saw two of her youngsters underneath the stove. It had fallen forward and was lying on the children. The pots and their contents had fallen on the children and the water had scalded the two minor plaintiffs.

Mr. Brown returned home and with his wife rushed the children to the hospital. The stove was not picked up until after Mrs. Brown went to the hospital.

Mrs. Janet McDonald, a neighbor in the building, heard loud crying and screaming between 7:30 and 8 p.m. In a matter of seconds she went to the door of the Brown apartment and saw the stove tipped over, actually resting on the oven door handle, which in turn was resting on the floor. How that oven door came open is unexplained. In its fallen position the stove was still connected by the electrical wire to the receptacle and it was taut.

We will take up the questions in order, the first being: Did the trial judge err in concluding, as a matter of law, that there was no negligence on the part of defendant under the law pertaining to landlord and tenant?

Counsel for plaintiffs contend that defendant was negligent in that he, as landlord, had knowledge of a defect or a dangerous condition in the leased premises which he failed to make known to the tenant.

Plaintiffs must prove by a fair preponderance of the evidence all the operative facts necessary to establish negligence. They must produce evidence which describes or pictures, or visualizes what actually happened at the time of the accident with sufficient clarity to enable the jury reasonably to conclude that defendant was guilty of negligence and that such negligence was the proximate cause of the accident. A jury is not permitted to speculate or conjecture what happened at the time of the accident: Ebersole v. Beistline, 368 Pa. 12.

" 'A jury is not permitted, . . . to speculate or guess; conjecture, guess or suspicion do not amount to proof' ": Gayne v. Philip Carey Manufacturing Co., 385 Pa. 618, 621.

Proof of negligence may be furnished by surround-

ing circumstances themselves and it is not essential to have eye-witness testimony. But, . . . "when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith": Smith v. Bell Telephone Company of Pa., 397 Pa. 134, 139.

In Stimac v. Barkey, 405 Pa. 253, Mr. Justice Jones quoted with approval what the court said in Lear v. Shirk's Motor Express Corp., 397 Pa. 144, as follows:

"A plaintiff is entitled to have his case considered by the jury even though he does not show that the *only* reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify *an* inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs, even though it does not *exclude*, an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident."

In Smith v. Bell Telephone Company of Pa., supra, Mr. Justice McBride pointed out, page 139, that the court was . . . "not here faced with a case relying on circumstantial evidence to show both the happening of the accident and the defendants' negligence." Here, however, we have exactly that situation. Plaintiffs rely on circumstantial evidence not only to show the happening of the accident but also to show defendants' negligence.

This case is quite similar to Stewart v. Morow, 403 Pa. 459. There a mirror fell upon a domestic while she was cleaning house. Mr. Justice Jones declared:

"It was encumbent upon Irene Stewart to produce more evidence than the mere fall of the mirror. No legitimate inference of negligence can be drawn from this fact per se, unless we would make an occupant of a home an insurer of the safety of a domestic worker therein and liable for every accident that may occur. That is not the law."

The record here is entirely barren of any evidence indicating how the accident occurred. The stove was level for six months before the Browns moved into the apartment and it was level for over six months while they occupied the apartment.

There was no inherent danger in the stove as fitted with the bolts. Even if the bolts were not level, the stove would not topple over. It would simply make cooking harder.

Plaintiffs would have us hold defendant responsible from the mere fall of the stove. There is no evidence whatsoever that the stove was disleveled. The slight slope in the floor was not dangerous.

We all know that oven doors are held in a position by some contraption. How did it become open when the stove tilted forward? Certainly someone must have pulled it open.

Edward testified that he visited the apartment at least once a month while the Browns were tenants and he saw nothing out of order.

Plaintiffs ask that an inference of negligence be drawn without any basis for it. In order to hold defendant negligent, we would have to assume, which we have no right to do, that the stove was out of level.

After the accident, some color books and crayons were found on the floor in the vicinity of the stove. This would seem to indicate that the older children were playing in and about the stove, and that they pulled open the oven door and the stove came forward.

Wife-plaintiff did not testify as to the location of the several pots, but their counsel would have us infer that the large gallon pot was on one of the burners nearest the front. There is absolutely no evidence to justify such inference.

In Riebel v. Land Title Banking & Trust Co., 143 Pa. Superior Ct. 136, the rear wall of an unoccupied building collapsed and children playing in the vicinity were struck by falling bricks. The court held it was incumbent on plaintiffs to show some condition existing before the accident that would lead a person exercising reasonable and ordinary care to believe that the wall was likely to fall. Mr. Justice Parker said, page 140:

"Unless the defendant knew, or ought to have known, that the condition of the wall was such that it was likely to fall and injure one in the vicinity, he is not liable. There is not a suggestion of actual notice to the possessor of the land that the wall was in a dangerous condition. Plaintiffs rely entirely upon inference to charge the defendant with notice. The fact that the wall fell is not of itself sufficient."

Here, according to plaintiffs' own testimony, the stove was leveled by bolts and there is no evidence that it was moved at any time.

This case is also similar to Glaberson v. Barowsky, 287 Pa. 583. There a youngster was putting the ticket in a chopper at a theatre and the allegation of negligence was that it was so located that it was possible for it to fall over and injure persons on the premises. The court said, page 585:

" 'As far as the location and construction of the machine is concerned, we see nothing in the situation which might charge the defendant with negligence. He was using a machine which was customary in the moving picture business and there was no evidence that similar machines were ever fastened to the floor. It is

true that it was possible for [the machine] to be pushed over or to fall upon persons on the premises, but only in the sense that such a thing might happen were it violently propelled from behind, not in the sense that the machine was so placed as to be likely to fall by reason of its own construction or location. There was no evidence whatever that the machine was of an unsafe character or in improper working order. The case would therefore fall within that class of cases where it has been held that there can be no recovery for using in an extraordinary manner objects which are perfectly safe in themselves.

" 'We are forced to conclude that the plaintiff, under the circumstances, must suffer the loss which he incurred in mis-using a machine which was not inherently dangerous, improperly constructed or located, and which, if not so misused, was perfectly safe to all who came within its vicinity.' "

Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible: Browning v. Monongahela Transportation Co., 126 W. Va. 195, 27 S.E. 2d 481.

Here there must have been a propelling force that either pushed the stove from behind or pulled it down from the front. As we pointed out, someone must have pulled the oven door and the stove with it because the stove was resting on the handle of the oven door according to Mrs. McDonald. Mrs. Brown testified that on occasions she herself rested a 17-pound roast on the oven door when it was open.

There is no evidence that the slight variance in the floor level was unusual or significant in any way. There is no evidence that the variance in the floor level caused or could have caused the stove to fall, and there is no evidence that the variance in the floor level was not completely compensated for by the use of leveling

bolts. There is no evidence to show that the stove itself was not level on the date of the accident.

As the court declared in Smith v. Bell Telephone Company of Pa., supra, page 138:

"We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based."

Plaintiffs could have, by calling an expert, determined the center of gravity of the stove and what pressure would be required to cause it to fall or tilt. This they failed to do.

There is not the slightest evidence in this case that the range as leveled was dangerous. There is no testimony in the record showing or from which it can be inferred that the installed range involved an unreasonable risk of bodily harm to plaintiffs, nor is there any testimony that defendant concealed any dangerous condition. Cf. Doyle v. Atlantic Refining Co., 357 Pa. 92, and illustration to §358 of the Restatement of Torts. To reiterate, the only testimony in the record is that the range was properly installed and that it remained in that condition to the time of the accident.

If the range had become unlevel or otherwise defective, that fact certainly would have been noticed by plaintiffs while using the range or upon a reasonable inspection. In such a case there would be no responsibility upon defendant.

The present state of the record leaves any determination of the negligence and the causative factor to speculation and conjecture and that is not permissible: Simko v. Bell Telephone Co. of Pennsylvania, 317 Pa. 539, 541; Direnzo v. Pittsburgh Bridge & Iron Works, 265 Pa. 561, 563.

As in Laing v. Remington Arms Co., 264 Pa. 130, " '. . . we have a case where we have merely the proof

of the fall of the object, with no proof of what caused it to fall.' "

The second question raised deals with the trial judge's refusal to permit plaintiffs to introduce the depositions of Edward Popky as substantive evidence of the facts contained therein.

On January 9, 1962, counsel for plaintiffs served notice upon counsel for defendant that "depositions of the defendant, and all agents, servants or employees of the defendant, having knowledge of the circumstances of the above mentioned matter, will be taken on oral examination ... on Friday, January 12, 1962."

Counsel for defendant appeared, but defendant did not. His son, Edward, came. Counsel for plaintiffs stated:

"I am informed by Mr. Silverblatt that the defendant, Charles H. Popky, is not present, but that Edward S. Popky, the son of the defendant, who manages the building for the defendant, is present and is prepared to respond to the depositions for the defendant."

Counsel for plaintiffs contends that the depositions of Edward were to have the same force and effect as if they were the depositions of the father. Of course, it must be remembered that the notice of deposition called not only upon defendant but "all the agents, servants or employees of the defendant having knowledge of the circumstances." Edward was such an agent and he alone had the knowledge required.

Counsel for plaintiffs feel that defendant should be estopped from objecting to the offer of the deposition. Since Edward was in the class of those summoned, if counsel for plaintiffs really wanted defendant, they could have secured his presence.

Under Pa. R. C. P. 4019, the court may make an appropriate order if ... "a party or an officer or managing agent of a party, after being subpoenaed, wil-

fully fails to appear before the person who is to take his deposition, or induces any party not to appear."

And under Pa. R. C. P. 4020; "At the trial, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions: . . . (2) The deposition of a party or of anyone who at the time of taking the deposition was an *officer, director, or managing agent* of a party may be used by an adverse party for any purpose."

These rules were in effect when the testimony of Edward was taken in January, but on April 2, 1962, both rules were amended.

Both of these rules made it very clear that it is the status of the witness at the time of taking the deposition that governs, and from the fact that the legislature used the phrase "managing agent" with reference to corporations, we assume that it does not refer to a managing agent of an individual. At times a director lives at a considerable distance from the site of operations and knows very little of the business. However, a "managing agent" would certainly be in a position to speak for a corporation.

Under rule 4019 the court can no longer apply sanctions to a director although under rule 4020 the deposition of a director could still be taken and used. Since the depositions taken in January were not those of a party, nor an officer, nor a managing agent, the trial judge properly refused to allow them to be used as substantive evidence.

Following the ruling of the trial judge, plaintiffs called Edward Popky as their witness. His testimony did not deviate from the depositions, so plaintiffs were not hurt in any way.

The third question deals with the refusal of the

trial judge to permit Edward Popky to be called as of cross-examination.

Counsel take the position that he was a person whose interest was adverse to plaintiffs.

The right to call witnesses as of cross-examination derives from the Act of May 23, 1887, P. L. 158, sec. 7, as amended March 30, 1911, P. L 35, sec. 1, 28 PS §381. The pertinent language reads as follows:

"In any civil proceeding, . . . a party to the record, or a person for whose immediate benefit such proceeding is prosecuted or defended, or any director or other officer of a corporation or joint stock or other association which is a party to the record, or for the immediate benefit of which such proceeding is prosecuted or defended, or any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination, . . ."

Counsel points out that in Shane v. Commercial Casualty Insurance Company, 48 F. Supp. 151, in an attachment execution proceeding brought by the injured person against an automobile liability insurer, the driver of the insured automobile against whom the injured person had obtained judgment was held to be an "adverse witness" within the meaning of the act and the injured person was entitled to call the driver as of cross-examination. In that case, the court said:

"Here in this proceeding . . . was a defendant, against whom a judgment had been obtained, on which judgment the attachment herein issued, which as to him was a species of execution process which makes him an adverse witness within the meaning of the Act of May 23, 1887, . . ."

In our case defendant has not brought any action against his son, nor could he do so at this time because the statute of limitations would bar any action.

The fact that an agent might become personally liable for dereliction of his duty does not give him an interest adverse to the party calling him as to permit him to be called for cross-examination: Brut v. Brut, 80 D. & C. 43.

In Stewart v. Supplee-Wills-Jones Milk Company, 180 Pa. Superior Ct. 583, the court held that where the defendant's driver was not made a defendant, the driver could not be called as on cross-examination.

In this case the contention is that Charles Popky was negligent because he violated a duty to plaintiffs. No such duty devolved on Edward Popky. The theory of liability over is far-fetched. As was said in Brut v. Brut, supra, page 46:

". . . the adverse interest of a witness which permits him to be called for cross-examination is a direct interest in the outcome of the suit in which he is called. If an indirect, contingent and supplementary interest was the criterion, then any employe or agent may be called for cross-examination on the ground that in the event of a judgment against his employer or principal, he might lose his position or job or otherwise suffer financial loss."

As Edward Popky had no direct interest in the outcome of the suit, the trial judge properly refused to permit him to be called as a witness with an adverse interest.

Since there is no merit to any of the reasons assigned, we enter the following

*Order*

Now, April 5, 1963, at 12 p.m., the motion to lift the nonsuit is denied.