Brown, Appellant, *v.* Popky.

Argued November 20, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Perry J. Shertz,* with him *Max Rosenn,* and *Rosenn, Jenkins & Greenwald,* for appellants.

*Arthur Silverblatt,* with him *David J. Reedy,* for appellee.

*Patrick J. Toole, Jr.,* with him *James P. Harris, Jr.,* for appellees.

OPINION PER CURIAM, January 8, 1964:
Judgments of nonsuit affirmed on opinion of President Judge FRANK L. PINOLA, reported in 32 Pa. D. & C. 2d 108.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
Marilyn Brown, 4 years of age, and her little brother, Barry Brown, 2 years of age, were playing on the floor of the kitchen of the apartment in which they lived with their parents, when the electric stove in the room tilted over on them, upsetting a large pot of boiling water which had been on the stove, scalding and

injuring them seriously. Through their father they brought suit in trespass against the owner of the apartment, averring negligence in the installation of the stove and failure to exercise the care which would have prevented the stove from losing balance and tipping. The trial court entered a compulsory nonsuit, stating that the plaintiffs had not proved any negligence on the part of the defendant landowner. The Majority of this Court has affirmed the entering of the nonsuit, and since it has adopted the opinion of the lower court as its own, I will refer to it as the Majority Opinion.

There was evidence that the floor of the kitchen was not level and the landlord knew this. There was evidence that the floor had such a pitch that the legs of the stove had to be adjusted so that the stove could rest evenly on the floor, and the landlord knew this. It was his duty, therefore to warn the plaintiffs of this hidden danger. He did not do so. It thus became a question of fact for the jury to determine whether the fall of the stove was due to either or both of these two factors, each one of which could spell out actionable negligence.

The Majority Opinion quotes from the case of *Lear v. Shirk's Motor Express Corp.*, 397 Pa. 144, as follows: "A plaintiff is entitled to have his case considered by the jury even though he does not show that the *only* reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not *exclude* an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident."

After quoting this excellent law, the Majority ignores it. In effect the Majority holds that the plain-

tiffs had to show *to the exclusion of all other* possibilities that the stove fell because of the negligence of the defendant.

The Majority quoted also from *Flagiello v. Crilly,* 409 Pa. 389: "A judgment of nonsuit can be entered only in clear cases and the plaintiff must be given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor."

Here again the law was ignored because the Majority has interpreted all reasonable inferences *against* the plaintiffs. Not only that. The Majority adopts inferences against the plaintiff where the record is bare of evidence to support them. For instance, the Majority says: "We all know that oven doors are held in a position by some contraption. How did it become open when the stove tilted forward?"

It then answers its own question by saying: "Certainly someone must have pulled it open." Why exclude the possibility that the door came open when the stove fell? There was no evidence that anyone pulled the door open. After supplying the supposition that *someone* opened the door, the Majority proceeds to erect on that airy hypothesis the fantasy that the children opened it. This is how the Majority puts it: "After the accident, some color books and crayons were found on the floor in the vicinity of the stove. This would seem to indicate that the older children were playing in and about the stove, and that they pulled open the oven door and the stove came forward."

To say that because color books and crayons were found close to the stove, the children must have opened the door of the stove is a non sequitur, if ever there ever was one. Does the Majority want to suggest that the stove was drawn to the children by the crayons?

Moreover, in considering the question of the non-suit by the court below, there is not the slightest blush of evidence in the plaintiff's case which would give color to the court's statement that books and crayons were found in the vicinity of the stove. Mrs. Sandra Brown, the children's mother, excluded the articles with as sweeping a negation as it is possible to obtain through questions and answers: "Q. And then after this stove fell over and you saw on the floor some water, boiling water, and the contents and the containers that were on the stove, they'd fallen off? A. Yes. Q. Was there anything else on the floor? A. No, there wasn't . . . Q. And were there any comic books or coloring books on the floor right in front of the stove? A. No, there wasn't. Q. You didn't see anything of that kind at all? A. No, there was nothing there like that."

And then there is the question of the location of the three pots on the stove. Mrs. Brown testified that she had filled one pot with 12 baby bottles and water, another with nipples and caps and water, and a third containing water for the milk formula. Since there were only four burners on the stove, at least one of those three large pots had to rest on a forward burner, but the Majority says: "The wife plaintiff did not testify as to the location of the several pots, but their counsel would have us infer that the large gallon pot was on one of the burners nearest the front. There is absolutely no evidence to justify such inference."

But again the record is as bare as the Sahara to exclude *that* inference and, incidentally, what has the Majority done with the rule it proclaimed that in considering a nonsuit all inferences are to be drawn in favor of the plaintiffs? In addition, it does not make a particle of difference which pot was on a forward burner. The three pots were all heavy pots. It is a reasonable inference that there was enough weight on the stove to cause it to tilt because of the pitch in the

floor or the unevenness of the legs of the stove, regardless of the precise location of the three waterladen pots.

No one denies that the stove did tilt and fall. What caused it to do so? The causation had to be one of three possibilities: The stove tilted because the floor was not level, it tilted because its legs did not rest evenly on the floor, or the children pulled it over. There is no evidence that four-year old Marilyn was a circus prodigy with muscles of iron and the pulling powers of a derrick; there is no evidence that two-year-old Barry was an infant Atlas. The inference that these two babies upset a multiple-hundred-pound stove, is really not within the periphery of inferences a court is allowed to assume in explaining a nonsuit, to say nothing of the fundamental rules of logic or the more rudimentary principles of common sense.

With the Herculean strength of the infants out of the case, there are left two other possible explanations for the tilting stove: the unlevel floor or the unlevel stove, either one of which conditions the jury could find attached negligence to the defendant. Why were those inferences excluded in the Majority's sustaining of the nonsuit? Contrary to the rule emphasized in the case of *Flagiello v. Crilly,* supra, cited by the Majority, and a thousand other cases to the same effect, what the Majority has done is to reject every inference in the case which is feasible and accept every inference which is far-fetched.

It has also overlooked precedent. In *Straight v. B. F. Goodrich Co.,* 354 Pa. 391, this Court said: "Despite dicta to the contrary in some of our cases, it is not the rule that circumstantial evidence to establish negligence need exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the injuries or death . . . 'Since proof to a degree of absolute certainty is rarely attainable

in any litigated factual controversy, *the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which the plaintiff relies.'* " (Emphasis supplied)

The jury could have found in the instant case that the defendant was negligent in not having bolted the stove to the floor, as he did after the accident. In *Palmer v. Miller North Broad Storage Co.*, 105 Pa. Superior Ct. 21, a child was injured when an unsecured crate fell on him. The Superior Court declared that it was unnecessary that the child show why the crate fell: "The difficulty in defendant's case is that this crate was placed so that as the child played along side of it, it toppled over and fell. This is what constitutes the negligence complained of. It was left in a dangerous position. That it had remained there for some time without falling proves nothing. *Common experience teaches us that an object having weight and height when placed in a position so that the strain is unequal, will not necessarily fall at once, but the shifting of its equilibrium may be gradual.*" (Emphasis supplied)

In *Vollum v. School Lane Apartments, Inc.*, 380 Pa. 252, an unattached door was left unsecured in an apartment building and it fell on the plaintiff. We said: "Nor does the fact that the door remained for some three hours without falling establish that it was correctly and securely leaned against the wall. It is common observation that an unsupported, standing object does not always fall immediately. The mysterious forces of nature cling to the status quo until the shifting of equilibrium (which may come about gradually from atmospheric pressure, currents of air or continuing vibrations) reaches inequality of balance, and then, the pole crashes, the steel fence falls, or the 300-pound door topples."

I believe there was enough evidence in this case to make out a prima facie case of negligence. Hence, it should have been submitted to the jury.

Since the Majority holds it should not, I dissent.

Mr. Justice ROBERTS joins in this dissenting opinion.