Leo Lynn *v.* County of Lackawanna et al. Charles Luger and Robert Pettinato, Commissioners, and the County of Lackawanna, Appellants.

Leo Lynn, Appellant *v.* County of Lackawanna et al., Appellees.

Argued April 5, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*James J. Ligi,* Solicitor, with him *Brian J. Cali,* Assistant County Solicitor, for Charles Luger and Robert Pettinato, Commissioners, and the County of Lackawanna.

*Paul A. McGlone,* for Leo Lynn.

OPINION BY JUDGE BLATT, June 27, 1983:

These cross appeals involve Leo Lynn's (taxpayer) assertion that the tax system imposed by the County of Lackawanna County Officers, Charles Luger and Robert Pettinato, and the County Commissioners (tax authorities) exceeds by approximately 5 mills the 25 millage maximum set forth in Article III, §302(c) of the Lackawanna County Home Rule Charter (Charter), which provides in part as follows:

The Board of Commissioners shall have ... the following powers:

(c) To levy taxes, assessments, and service charges. *The maximum millage allowable under existing procedures shall be 25 mills.* Upon imposition of such a tax rate, any millage increase which exceeds 5% of the preceding year's rate of millage shall be effective only if approved by a referendum of the qualified electors of the county. (Emphasis added.)

Before the Court of Common Pleas of Lackawanna County the taxpayer argued in a petition for a declaratory judgment that the 4 mill assessment on personal property and the 4.2 mill assessment for debt service were both to be included in determining the total existing millage in order to see whether or not the 25 mill limitation was exceeded. The taxing authorities argued to the contrary, and additionally alleged that the above provision of the Charter was unconstitutional insofar as it attempted to restrict the levying of debt service millage.

In 974 C.D. 1982, the taxpayer appeals the trial court's conclusion that personal property millage was not to be included in the calculation under Article III, §302(c). In 881 C.D. 1982, the tax authorities appeal the trial court's conclusion that the aforementioned provision of the Charter was constitutional.

974 C.D. 1982

In arriving at its conclusion that personal property millage ought not to be included in the calculation of the "maximum millage allowable" under Article III, §302(c) of the Charter, the trial court reasoned:

> The nature of the property base is radically different, the class of taxpayers is significantly different.... Including the millage rate on personal property in the total millage rate which purports to be regulated by the Home Rule Charter will lead only to absurd results. For example, it would make very little sense for those who engender the county budget to make any assessment on personal property when one mill of personal property tax would generate only one-seventh (1/7) of the revenue that one mill assessment on real property would generate.
>
> In addition to the patent illogic of lumping the personal property millage together with the real property millage for purposes of limitation by the Home Rule Charter, this Court will take judicial notice that the fundamental question presented to the voters of Lackawanna County when the Home Rule Charter was adopted was whether the authority of the Commissioners to escalate *real property taxes* should be specifically limited. There can be no doubt that the typical taxpayer-voter who exercised his voting franchise ... was considering the question of the Charter on the annual *real estate millage*. It is truly unfortunate that the language of the Home Rule Charter does not specify the millage as "millage on real estate," but no other rational interpretation can be made. (Emphasis in original.)

The taxpayer argues, however, that there is nothing in the record to support a taking of judicial

notice that the 25 mill limitation applied only to real estate taxes and not to personal property taxes; that the voters in adopting the Charter were entitled to rely upon the representation that the maximum millage allowed without referendum approval was 25 mills; and that the language of the Charter clearly specifies a maximum limit of 25 mills, regardless of the subject upon which the tax is imposed.

Concerning the taxpayer's first argument that the trial court erred in taking judicial notice that "the typical taxpayer voter who exercised his voting franchise ... was considering the question of the Charter on the annual real estate millage," we agree that the court in so doing recognized matters beyond those which are self-evident or of such common knowledge that no proof of the noted fact need be established by any party. *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978); *Brown v. Popky*, 413 Pa. 236, 196 A.2d 638 (1964); *Tilghman v. Commonwealth*, 27 Pa. Commonwealth Ct. 484, 366 A.2d 966 (1976), *aff'd*, 473 Pa. 319, 374 A.2d 535 (1977). Nor do we believe that the facts as noted by the trial court can be characterized as commonly known local historical facts. *Commonwealth v. Ball*, 277 Pa. 301, 121 A. 191 (1923). Judicial notice of certain adjudicative and legislative facts originally developed as a mechanism whereby matters not reasonably subject to dispute or capable of certain verification could be recognized by the courts thus expediting the litigation involved. *See Petro v. Kennedy Township Board of Commissioners*, 49 Pa. Commonwealth Ct. 305, 411 A.2d 849 (1980); McCormick, Handbook of the Law of Evidence, §§330-32 (2d. Ed. 1972). However, we have recognized that "[j]udicial knowledge is not the same as judicial notice permitting formal proof to be omitted," *Department of Transportation v. Wolf*, 66 Pa. Commonwealth Ct. 334, 337, 444 A.2d 811, 813 (1982),

and that it "should not ... operate to deprive the opposing party of the opportunity to disprove the fact," nor should it "be carried so far as to make it impossible for an appellate court to determine upon which basis factual findings were made." *Department of Transportation v. McGowan*, 68 Pa. Commonwealth Ct. 599, n. 6, 450 A.2d 232, n. 6 (1982) (*quoting Wells v. Pittsburgh Board of Public Education*, 31 Pa. Commonwealth Ct. 1, 5, 374 A.2d 1009, 1011 (1977)); McCormick, §§333-34; Comment, *Effect of Judicial Notice on the Adversary System*, 13 Vill. L. Rev. 551 (1968).

We believe, therefore, that the trial court "engaged in an exercise of judicial notice unwarranted by the record in this case." *Casper*, 481 Pa. at 161, 392 A.2d at 296. Consequently, we must now[1] look to the reasons set forth by the trial court, and argued by the tax authorities, to determine if the court erred in interpreting the 25 mill limitation in Article III, §302(c) of the Charter as excluding personal property millage.

The critical language in the aforesaid Charter provision is that "[t]he maximum millage allowable under existing procedures shall be 25 mills," and the trial court observed that "this language is problematic because there is no specific reference to a millage rate on real property and a millage rate on personal property." (Emphasis deleted.) We believe, however, that

---

[1] We believe that there is no need for a remand on the issue judicially noted by the trial court in that the court took notice *sua sponte* after the tax authorities had presented their answer, new matter and briefs concerning the taxpayer's petition for a declaratory judgment. Thus, the tax authorities were not precluded by the trial court's action in taking judicial notice from establishing, or led to believe that they need not establish, that the 25 mill limitation in Article III, §302 of the Charter was presented to the taxpayers in the context of only limiting real estate millage. *See also* footnote 2 *infra*.

the trial court erred in interpreting this provision as excluding personal property millage, and conclude that the use of the term "millage" therein without more indicates an intent that this term be construed in its general and broadest sense.[2] And, although we agree with the trial court that greater total tax revenue would be collected if personal property millage was excluded, because a higher real property millage would then be allowable, we do not believe that our interpretation of the language concerned leads to an absurd result or one not intended by the voters who approved the Charter. The remedy sought by the tax authorities, we believe, lies not in this Court but instead raises a political question to be addressed and resolved if necessary by those who can revise the Charter.

As to the argument of the taxing authorities that the personal property millage, enabled by Section 1 of the "Personal Property Tax Act,"[3] should not be counted in figuring the total existing millage because of Section 302(c) of the Home Rule Charter and Optional Plans Law,[4] we note that this Section provides in part that:

> Acts of the General Assembly in effect on the effective date of this act that are uniform and applicable throughout the Commonwealth shall remain in effect and shall not be changed or modified by this act....

---

[2] The final report of the Lackawanna County Government Study Commission, which was presented to the electorate before the Charter was adopted, stated that "referendum approval for assessments in excess of 25 mills is a safeguard against excessive taxation and a protection of the citizenry of Lackawanna County."

[3] (Unofficial popular title) Act of June 17, 1913, P.L. 507, added by the Act of April 18, 1978, P.L. 56, *as amended*, 72 P.S. §4821.1.

[4] Act of April 13, 1972, *as amended*, 53 P.S. §1-302(c).

And, while we agree that the so-called Personal Property Tax Act precedes the Charter here involved, we also believe that the tax authorities have failed to establish how, if at all, the 25 *mill* limitation set forth in Article III, §302(c) of the Charter actually "changed or modified" their authority and ability to levy personal property taxes. Section 1 of the Personal Property Tax Act allows only a personal property tax of 4 mills, and the record is clear that the tax authorities have imposed a 4 mill assessment on personal property.

For the foregoing reasons, we will reverse the trial court's order and direct that personal property millage be included in the calculation of the total existing millage for purposes of Article III, §302(c) of the Charter.

## 881 C.D. 1982

The tax authorities argue that the 25 mill limitation of Article III, §302(c) is an unconstitutional restriction on their authority to levy debt service[5]

---

[5] Debt service allows governmental bodies holding tax powers to borrow money by way of the issuance of bonds and to satisfy such bonds by means of assessing debt service millage. Before the trial court the tax authorities argued that debt service millage was not to be considered for purposes of the 25 mill limitation in Article III, §302(c) of the Charter. The trial court held that:

In all prior years, since the adoption of the Home Rule Charter, debt service has been included within the 25 mill limitation.

... [I]f the assessment for debt service millage falls outside of the restrictive perimeters of the Home Rule Charter, there is really no point in having any millage ceiling. This ... would allow the Commissioners to borrow money in excess of the amount which could legally be assessed under the Charter, and assess the taxpayer under the guise of debt service.

Although raised in the "statement of the questions involved" section of the tax authorities' brief, they concede in their "argument" section that "debt service millage is within the perimeters of the limitation of millage as established in the Charter."

millage. Alternatively, they argue that, should the 25 mill limitation be found facially constitutional, it is unconstitutional for those debts incurred prior to the adoption of the Home Rule Charter.

We believe, as did the trial court, that the general rules that legislative actions are presumed to be constitutional and that the burden rests heavily upon the challenger to show that such actions clearly, palpably and plainly violates the constitution,[6] should be extended to apply to Article III, §302(c) of the Charter.

Specifically, the tax authorities cite Article I, Section 17 of the Pennsylvania Constitution, which prohibits "any law impairing the obligation of contracts" and Article IX, Section 10 of said Constitution. Article IX, §10 provides in pertinent part that:

> Any unit of local government, including municipalities and school districts incurring any indebtedness shall at or before the time of so doing, adopt a covenant which shall be binding upon it so long as any such indebtedness shall remain unpaid to make payments out of its sinking funds or any other of its revenues or funds at such time and in such annual amounts specified in such covenant, as shall be sufficient for the payment of the interest thereon and the principal thereof when due.

The gravamen of the tax authorities' argument is that the 25 mill limitation in the Charter impairs contracts between them and the bondholders in that the bondholders cannot be held to look to or rely upon special debt service levies for the payment or redemption of the bond obligations. The trial court, however, found that, when the bonds concerned were issued, it was

---

[6] *See e.g., Robson v. Penn Hills School District*, 63 Pa. Commonwealth Ct. 250, 437 A.2d 1273 (1981); *County of Lawrence v. Foht*, 33 Pa. Commonwealth Ct. 379, 381 A.2d 1348 (1978).

specified and intended that "the *general revenue* of the county ... was pledged for the payment of interest and redemption of the principal" thereon. (Emphasis added.) It concluded, and we agree, that inasmuch as there was no *special* debt service earmarked for the bonds involved, there can be no special debt service to which the bondholders could have looked to at the time of contract formation, and consequently there can be no impairment of contract found here. *See Heller v. Depuy,* 2 Pa. Commonwealth Ct. 196, 277 A.2d 849 (1971). Nor do we see the relevance of Article IX, Section 10 of the Pennsylvania Constitution which is also cited by the tax authorities in their contention that the 25 mill limitation is unconstitutional. Certainly the 25 mill limitation does not preclude debt servicing under Article IX, Section 10. And, under the instant facts, it appears that by specifying the general revenue fund as the source underlying the bond obligation, the constitutional mandate set forth in this section was fulfilled.[7]

We hold, therefore, that the tax authorities have failed to carry their burden of proving Article III, §302(c) of the Charter to be constitutionally infirm, and will affirm the trial court in this appeal.

## Order in 881 C.D. 1982

And Now, this 27th day of June, 1983, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.

## Order in 974 C.D. 1982

And, Now, this 27th day of June, 1983, the order of the Court of Common Pleas of Lackawanna County

---

[7] The tax authorities' alternative argument must fail for the same reasons as their initial argument.

in the above-captioned matter is hereby reversed to the extent that it found that personal property millage is not to be included for purposes of the millage limitation set forth in Article III, §302(c) of the Lackawanna County Home Rule Charter.

Judges ROGERS and CRAIG dissent in 974 C.D. 1982.