485 A.2d 732

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,**

v.

**The SPA ATHLETIC CLUB, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 1984.

Decided Dec. 18, 1984.

366

Gary F. DiVito, Harrisburg, Eileen S. Maunus, Philadelphia, for appellant.

Richard F. Brabender, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

This is an appeal by the Pennsylvania Liquor Control Board (hereafter "Board") of a decision of the Court of Common Pleas of Erie County holding unconstitutional a section of the Liquor Code, Act of April 12, 1951, P.L. 90, Art. I, § 102, 47 P.S. § 1–102, as amended.[1]

Appellee, The Spa Athletic Club, a private club, was awarded a liquor license by the Board for its premises in Millcreek Township, Erie County, on January 30, 1952. Appellee ceased operations on June 4, 1980 after being forced to vacate its premises due to loss of its lease. Pursuant to 47 P.S. § 4–474,[2] the license was turned over to

---

1. The distinction in question here was added to the Liquor Code by the Act of July 20, 1968, P.L. 429, § 201, § 1, and provided that

    [w]henever a club license has been returned to the board for the benefit of the licensee due to the licensed establishment not having been in operation for any reason whatsoever for a period of time not exceeding fifteen days, the license shall be held by the board for the benefit of the licensee for a period of time not exceeding one year, or, upon proper application to the board, for an additional year, and the license shall be revoked at the termination of the period, and transfer of the license shall not be permitted after the termination of the period. 47 P.S. § 4–474.

2. Also applicable is 40 Pa.Code § 7.31, which provides in relevant part that

    (a) Any licensee whose licensed establishment is not in operation for a period of 15 consecutive days for any reason shall return his license and, if a liquor license, his Wholesale Purchase Permit Card, to the Board not later than the expiration of the 15-day period. The return of such license and card will not invalidate the license, which will be held in safekeeping for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises, or for transfer.

    (b) If the license is returned because the licensee no longer has a lease for the licensed premises, or removes therefrom, or is dispossessed by legal process, the license will be invalidated as to the premises for which issued but will not be invalidated generally nor cancelled, and will be held in safekeeping for the benefit of the licensee for transfer only.

    (d) No license surrendered to the Board, nor any renewal thereof in possession of the Board, will be held for the benefit of the licensee for a period exceeding one year from the date of surrender, except when, in the opinion of the Board, circumstances beyond the control of the licensee prevent reactivation and except as provided

the Board while an attempt was made to obtain new premises. Having been unable to relocate within a year, the Appellee applied for, and was granted, an additional year within which the license was to be held by the Board in safekeeping for the benefit of the Appellee. *Id.* When the Appellee was unsuccessful in obtaining new premises by the end of the second year, the Board, after conducting a hearing, issued an order dated September 22, 1982 revoking the license effective October 26, 1982.

The license revocation was appealed to the Court of Common Pleas of Erie County which found 47 P.S. § 4-474 to be a denial of equal protection of the laws violative of the United States Constitution and a "special law" violative of Article III, Section 32 of the Pennsylvania Constitution. This finding was based on the court's determination that no rational basis existed for the distinction between club licenses, which can be held in safekeeping for a maximum of two years regardless of circumstances, and non-club licenses, which can be held in safekeeping indefinitely so long as the licensee can demonstrate to the Board that reactivation of the license is prevented by circumstances beyond his control. Having determined that § 4-474 was unconstitutional, the court remanded the case to the Board for a determination of whether the Appellee's failure to reactivate the license was caused by circumstances beyond its control. This Court has jurisdiction of the Board's appeal pursuant to 42 Pa.C.S. § 722(7).[3]

in section 474 of the Liquor Code (47 P.S. § 4-474) with regard to club licenses. Failure of the licensee to reactivate the license and resume operation of the licensed business or to effect a transfer of the license within the one-year period shall be sufficient cause for revocation of the license.

3. It is to be noted that this issue has been previously dealt with by several courts of common pleas with different results. In *Appeal of George W. Pepperman Post No. 36 Serviceman's Club, Inc.,* 73 Pa.D. & C.2d 524 (C.P. Lycoming, 1976), the court held that refusal to renew a club license held for safekeeping for more than two years for reasons beyond the club's control violated the prohibition of class legislation. In *Appeal of Chester County Tavern Association,* 20 Ches.Co.Rep. 198 (1971), the court upheld the distinction of club licenses from others as a valid exercise of police power.

We have held that the equal protection clause and the prohibition of special legislation are substantially similar, *Baltimore & Ohio Railroad Co. v. Commonwealth, Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975), and therefore will treat them together in our discussion of the constitutional issue.

As we have recently summarized in *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 145, 477 A.2d 1302, 1305–06 (1984)

[u]nder a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. *Singer v. Sheppard* [464 Pa. 387, 346 A.2d 897], *Id.* In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review. *U.S. Dept. of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767, 775 (1973) (concurring opinion of Mr. Justice Marshall), citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification.

Classifications in the area of commercial regulation are normally tested against the rational basis principle. *See, City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Allied Stores of Ohio, Inc. v. Bow-*

*ers,* 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Likewise, our interpretations of the special legislation provision of the Pennsylvania constitution have given wide latitude to commercial regulation. In *DuFour v. Maize,* 358 Pa. 309, 56 A.2d 675 (1948), we upheld the Bituminous Coal Open Pit Mining Conservation Act, Act of May 31, 1945, P.L. 1198, against a challenge that it constituted special legislation by imposing conservation regulations on one type of coal mining and not others. The classification was held to be constitutional because it was based on real distinctions in the subjects classified. Similarly, we upheld a law requiring railroads, but not other common carriers, to adopt weekly pay periods where no collective bargaining agreement or employment contract provided otherwise, *Baltimore & Ohio Railroad Co. v. Commonwealth, supra.*

The Court of Common Pleas noted that the distinction created by Section 4–474 had not existed prior to the Act of 1968, that the legislature's reasons for making the change could not be determined because the law was amended without hearing, debate, or legislative findings, and that the Board did not suggest any reasons the legislature may have had for so amending the Liquor Code. On this basis the court found that no proper basis for the distinction existed.

The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. Accordingly, it was error for the lower court to equate the absence of a statement of the reasons supporting the legislative act with the absence of any rational reason for the legislation. It is not necessary that the rational basis for a classification be set forth in the statute or in the legislative history. Nor is it necessarily incumbent upon the government agency to

advance the reasons for the act in defending the classification. The burden must remain upon the person challenging the constitutionality of the legislation to demonstrate that it does not have a rational basis. Should the reviewing court detect such a basis, from whatever source, the legislation must be upheld.

■ Viewing the case in this light, it is beyond question that the Commonwealth's overall liquor licensing scheme, as embodied in the Liquor Code, serves a legitimate interest in protecting public health and safety by regulating the sale of liquor so as to prevent its abuse. Within this scheme, the General Assembly has distinguished club licenses from other licenses in a number of ways, e.g. clubs are permitted to make sales after 2:00 a.m. and to make sales on Sunday without a special permit, 47 P.S. § 4–406; club licenses do not count against the quota of licenses which may be awarded in a municipality, 47 P.S. §§ 744–1002 and 744–1003; and the holder of a club license must be a nonprofit corporation or association, 47 P.S. § 1–102.

According to the statutory definition, the main purposes of a club are the "mutual benefit, entertainment, fellowship or lawful convenience" of the members. 47 P.S. § 1–102. The sale of liquor is secondary to, indeed in facilitation of, these purposes. The same is not true of commercial establishments whose main purpose is the sale of liquor for profit. Whereas the purposes of a club can be achieved despite the revocation of a liquor license, the purposes of a commercial establishment cannot. It is thus appropriate to give the latter an opportunity to show "circumstances beyond its control" before revoking of the license privilege. More importantly, it is not inappropriate to "presume" in the case of a club which has not been able to find a location for two years either that it can no longer fulfill its main purposes as a club or that it can fulfill those purposes even in the absence of a liquor license.

■ Given the many real distinctions between club and nonclub licensees and the Commonwealth's legitimate inter-

est in facilitating the efficient functioning of its licensing scheme by limiting the amount of time for which a license may be held in abeyance, we find that the different rules for license reinstatement are rationally based.

The Order of the Court of Common Pleas is reversed, and the Order of the Pennsylvania Liquor Control Board is reinstated.