553 A.2d 472

Appeal of Angeline L. McNelly from a Decision of The Chester Upland School District and The Board of School Directors of Chester Upland School District Terminating Angeline L. McNelly's Employment. Chester Upland School District, Appellant.

Appeal of Claire M. Jackson from a Decision of The Chester Upland School District and The Board of School Directors of Chester Upland School District Terminating Claire M. Jackson's Employment. Chester Upland School District, Appellant.

Appeal of Frances McCray from a Decision of The Chester Upland School District and The Board of School Directors of Chester Upland School District Terminating Frances McCray's Employment. Chester Upland School District, Appellant.

Appeal of Vidilia McDuffy from a Decision of The Chester Upland School District and The Board of School Directors of Chester Upland School District Terminating Vidilia McDuffy's Employment. Chester Upland School District, Appellant.

Appeal of H. Teresa Edge from a Decision of The Chester Upland School District and The Board of School Directors of Chester Upland School District Terminating H. Teresa Edge's Employment. Chester Upland School District, Appellant.

Argued June 14, 1988, before Judges CRAIG, BARRY and SMITH, sitting as a panel of three.

*Leo A. Hackett, Fronefield and deFuria,* for appellant.

*Anthony Carrozza III, Francis Pileggi Law Associates, P.C.,* for appellees, Angeline L. McNelly, Claire M. Jackson and Frances McCray.

*James J. Byrne, Jr., Curran, Winning & Fioravanti, P.C.,* for appellee, Vidilia McDuffy.

*Melvin A. Schwarz, Dechert, Price & Rhoads,* for appellee, H. Teresa Edge.

OPINION BY JUDGE SMITH, January 13, 1989:

Appellants, Chester Upland School District (District) and the Board of School Directors of Chester Upland School District (Board) appeal from the June 4, 1987 order of the Delaware County Court of Common Pleas reinstating Appellees Angeline L. McNelly, Claire M. Jackson, Frances McCray, Vidilia McDuffy and H. Teresa Edge with back pay and all benefits to their positions as non-professional employees with the District. The trial court is affirmed.

The appeals docketed at Nos. 1544 C.D. 1987 through 1548 C.D. 1987 arise under the same set of facts and will therefore be consolidated for disposition by this Court. Questions presented for review are whether Section 1106 of the Public School Code of 1949

(Code)[1] prohibits the adoption of a residency requirement for non-professional employees; whether Section 1106 of the Code violates the Equal Protection Clause of the United States Constitution and Article III, §32 of the Pennsylvania State Constitution; whether the trial court abused its discretion in considering facts not of record; whether the trial court's distinction between Appellants and the Philadelphia and Pittsburgh school districts is supported by substantial evidence; and whether Appellants are precluded from enforcing their residency requirement by operation of the doctrines of equitable estoppel and laches.

On April 26, 1976, the Board enacted a resolution which required all non-professional employees hired as of that date to be residents of the District. This policy was amended on June 28, 1976 to require that all present non-professional employees must reside within the District as a condition of continued employment with the District.[2]

Section 1106 of the Code was amended by the Act of June 24, 1980, P.L. 109 to prohibit residency requirement for employees in school districts except districts of the first class and first class A. In 1983, Appellants instituted a declaratory judgment action in this Court challenging the constitutionality of the statutory residency requirement. *Chester Upland School District v. Commonwealth of Pennsylvania*, 90 Pa. Commonwealth Ct. 464, 495 A.2d 981 (1985). The case was dismissed as Appellants did not present an actual case or controversy.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1106.

[2] Appellant's brief states that the residency resolution was amended on June 28, 1978. However, the certified record and the trial court opinion indicate that it was amended on June 28, 1976.

Appellants thereafter began enforcement of the District's residency requirement. Angeline McNelly, library aide; Claire Jackson, accounts payable clerk; and Frances McCray, library aide, were terminated on August 9, 1985. Vidilia McDuffy, secretary, and Teresa Edge, library aide, were terminated on July 7, 1986 and September 22, 1986, respectively. Appellees filed an action in the Delaware County Court of Common Pleas following their termination. On June 4, 1987, the trial court ordered and directed that Appellees be reinstated to their former positions with back pay and all benefits. The trial court issued its opinion on October 29, 1987, holding that the terminations violated Section 1106 of the Code; that Section 1106 was constitutional; and that the doctrines of laches and equitable estoppel barred Appellants from enforcing the residency requirement. Appellants thereafter appealed to this Court.

On appeal, this Court must affirm the trial court unless it finds a violation of constitutional rights, an error of law, manifest abuse of discretion, or that any necessary findings of fact are not supported by substantial evidence. *Waslo v.North Allegheny School District*, 121 Pa. Commonwealth Ct. 34, 549 A.2d 1359 (1988).

Appellants initially argue that Section 1106 of the Code prohibits a residency requirement only as to professional employees[3] Section 1106 provides in pertinent part:

---

[3] Section 1101 of the Code defines professional employee as follows:

(1) The term 'professional employe' shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries, the selection of whom is on the basis of merit as determined by eligibility lists, and school nurses.

> The board of school directors in every school district shall employ the necessary qualified professional employees, substitutes and temporary professional employees to keep the public schools open in their respective districts in compliance with the provisions of this act. *Except for school districts of the first class and first class A which may require residency requirements, no other school district shall require an employe to reside within the school district as a condition for appointment or continued employment.* (Emphasis added.)

Appellants are classified as a district of the second class. Section 2-202 of the Code, 24 P.S. §2-202. Appellants contend that the word "employe" as used in Section 1106 only refers to professional employees because terms in a statute must be given the meaning dictated by the context in which they are used. *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985). Appellants also point out that the fact that Article XI of the Code contains the heading "Professional Employees" mandates that the term "employees" must apply only to professional employees, noting that this Court has held that headings of statutes may be considered in construing a statute. *Fairmount Insurance Co. v. Insurance Department,* 85 Pa. Commonwealth Ct. 131, 481 A.2d 696 (1984); Section 1924 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1924.

However, as Appellees correctly argue, the Appellants' argument ignores other principles of statutory construction. When the words of a statute are clear and free from ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. *Shestack v. General Braddock Area School District,* 63 Pa. Commonwealth Ct. 204, 437 A.2d 1059 (1981); 1

Pa. C.S. §1921. The plain language of the statute here is clear and unambiguous and indicates that it was meant to apply to all employees. This Court is not free to engraft additional verbiage in an effort to pursue the statute's spirit. *Black v. Billy Penn Corporation,* 72 Pa. Commonwealth Ct. 628, 632, 457 A.2d 192, 193 (1983); *Worley v. Augustine,* 310 Pa. Superior Ct. 178, 456 A.2d 558 (1983). Throughout the Code, distinctions are made between professional and other types of employees, and if the legislature intended to qualify the word "employe" in the amendment, it would have included the word "professional" as a qualifier. Furthermore, where the legislature has included specific language in one section but not in another, it should not be implied where excluded. *Patton v. Republic Steel Corporation,* 342 Pa. Superior Ct. 101, 492 A.2d 411 (1985).

Although Article XI is entitled "Professional Employees", the title cannot control its plain meaning. *Commonwealth v. Magwood,* 503 Pa. 169, 469 A.2d 115 (1983). Nor is there any merit to the Appellant's claim that Article XI deals exclusively with professional employees. Article XI includes provisions which apply to both professional and non-professional employees. *See* Sections 1176 through 1182 of the Code which govern all employees.

Appellants further argue that legislative history is not competent evidence in construing a statute, citing *Mikell v. Philadelphia School District,* 359 Pa. 113, 58 A.2d 339 (1948). Appellants are clearly in error as *Mikell* only stands for the proposition that legislative history may not be considered in determining whether a law was properly enacted. Legislative history has been held to be an appropriate tool in interpreting a statute. *Paskal v. Heckler,* 768 F.2d 540 (3d. Cir. 1985); 1 Pa. C. S. §1921(c)(7). However, the statute here is clear and

unambiguous, and there is no need to consider legislative history. *Daugherty v. Continental Can Co.,* 226 Pa. Superior Ct. 342, 313 A.2d 276 (1973).

Appellants next argue that Section 1106 of the Code as amended in 1981 violates the Equal Protection clauses of the Federal and State Constitutions.[4] Issues under the Equal Protection Clause and Article III, §32 of the Pennsylvania Constitution may be considered together as the two are sufficiently similar to warrant like treatment, and both require that distinctions have some "fair and substantial" relation to the legislative objective. *Baltimore and Ohio Railroad v. Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975), *appeal dismissed,* 423 U.S. 806 (1975). Article III, §20 of the Pennsylvania Constitution specifically permits classification by population:

> The Legislature shall have the power to classify counties, cities, boroughs, school districts and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this Constitution.

It was in accordance with the above that the legislature classified the School District as a district of the second class.

Appellants claim that Section 1106 does not pass constitutional muster because it does not rest upon

---

[4] Appellees argue that Appellants have no standing to challenge the constitutionality of Section 1106 of the Code. *Penn-Delco School District v. Schukraft,* 95 Pa. Commonwealth Ct. 619, 506 A.2d 956 (1986), *appeal denied,* 514 Pa. 644, 523 A.2d 1133 (1987). However, as the standing issue was not raised below, it is now waived. *McMullen v. Zoning Hearing Board of Harris Township,* 90 Pa. Commonwealth Ct. 119, 494 A.2d 502 (1985).

grounds having a fair and substantial relation to the legislative purpose of classifying school districts by population. Rather, it is a grant, under guise of classification by population, of special privileges and exemptions to two favored localities for political reasons. Appellants contend that there is no valid or substantial basis to distinguish Philadelphia or Pittsburgh from other school districts for the purpose of a residency requirement on the basis of population. Moreover, Appellants assert that a residency requirement does not bear any relation to the size or type of governmental function and question why school districts are treated differently than municipal governments.

In *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978) the Supreme Court stated:

'Fair and substantial' means that the classification must be reasonable and not arbitrary, and the classification must rest upon some ground of difference which has a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike.

*Id.*, at 119, 392 A.2d at 275. As the trial court correctly noted, there are real distinctions between school districts of the first class, first class A and second class. These districts can be distinguished on the basis of population, high unemployment, lack of adequate tax base, enhancement of the quality of employee performance and the general economic flow from local expenditures of employees' salaries. Trial Court Opinion, pp. 8-9. Therefore, the classification is rationally related to legitimate governmental interests. Neither the Equal Protection Clause of the United States Constitution nor Article III, §32 of the Pennsylvania Constitution prohibits a state from drawing distinctions between various classes. *Matter of Estate of Cavill*, 459 Pa. 411, 329 A.2d 503 (1974). Nor is there any basis to Appellants'

challenge to the difference in treatment between school districts and other municipal corporations. The statute in the case *sub judice* deals exclusively with different types of school districts only.

Appellants further argue that the trial court abused its discretion by going outside the record to find justification for a distinction between school districts on the basis of different populations and that the opinion of the trial court is not supported by substantial evidence. Appellants contend that the trial judge based its decision at least in part upon population distinctions which he found between the District and Philadelphia and Pittsburgh school districts. Although Appellants admit that there is a difference in population between the school districts, they argue that they suffer from the same social and economic problems which are indigenous to Pittsburgh and Philadelphia and that there is no evidence of record to support the distinctions made by the trial judge.

The party challenging the constitutionality of a statute bears a heavy burden to overcome the presumption of constitutionality. *Boyle Land and Fuel Co. v. Environmental Hearing Board*, 82 Pa. Commonwealth Ct. 452, 475 A.2d 928 (1984), *affirmed*, 507 Pa. 135, 488 A.2d 1109 (1985). Legislation will not be invalidated unless it clearly, palpably and plainly violates the constitution and any doubts are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 485 A.2d 732 (1984). Here, Appellants have clearly failed to meet that burden. They have offered no evidence whatsoever to support their claim that there were no relevant distinctions or similarities between themselves and the Philadelphia and Pittsburgh school districts. Moreover, the trial court correctly took judicial notice of the fact that the populations in Pittsburgh and Philadelphia are

higher than that in the District as it is a fact which is self-evident. *Lynn v. County of Lackawanna,* 75 Pa. Commonwealth Ct. 238, 462 A.2d 320 (1983). The trial court thus did not go outside the record to find distinctions between the school districts, and its decision is therefore supported by substantial evidence.

Appellants finally assert that their enforcement of the residency requirement is not barred by the doctrines of laches or equitable estoppel. Because of this Court's disposition of the issues previously discussed, Appellants' final arguments need not be thoroughly addressed. Assuming, however, that Appellants' residency requirement was deemed to be valid, the doctrines of laches and equitable estoppel bar Appellants from enforcing the residency requirement.

Appellants claim that governmental bodies may not be estopped on the same terms as other litigants and that the failure of a government agency to enforce its requirement does not insulate an individual from later enforcement of that policy by the government agency. Appellants cite *Heckler v. Community Health Services, Inc.,* 467 U.S. 51 (1984) and *Hauptmann v. Department of Transportation,* 59 Pa. Commonwealth Ct. 277, 429 A.2d 1207 (1981). However, the rule enunciated in *Heckler* indicates that the rule is not absolute and that a private party has a heavy burden of proving estoppel on the part of the governmental agency. In *Hauptmann,* this Court stated that there must be some affirmative action or misrepresentation by a governmental agency which would have induced the other party to rely on misrepresentation by the agency to prevent the agency from enforcing the requirement.

It is well-established in Pennsylvania that a school district can be precluded from enforcing a residency requirement by laches and equitable estoppel. *See Board of Education v. Philadelphia Federation of Teachers Lo-*

*cal No. 3*, 40 Pa. Commonwealth Ct. 490, 397 A.2d 1273 (1979). The doctrine of laches applies when a party's rights are so prejudiced by the delay of another in pursuing a claim that it would be an injustice to permit the assertion of a claim against a party so prejudiced. Moreover, the doctrine of equitable estoppel arises when a party by acts or representations, intentionally or through culpable negligence, induces another to believe that certain facts exist and that party relies and acts on such belief to his or her prejudice if the former is permitted to deny the existence of such facts. *Id.*, at 506, 397 A.2d at 1280. The record in this case clearly demonstrates that Appellants' enforcement actions are barred by the doctrines of laches and equitable estoppel as Appellants waited nine years before enforcing the residency requirement to the prejudice of Appellees.

Accordingly, the order of the trial court is affirmed.

ORDER

AND NOW, this 13th day of January, 1989, the order of the trial court is affirmed.

Judge MACPHAIL did not participate in the decision in this case.