# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Lohr and Jolene K. Fouse, :
                   Appellants :
                   :
        v. :
                   :
Saratoga Partners, L.P. and : No. 128 C.D. 2018
Huntingdon County Tax Claim Bureau : Argued: December 11, 2018

BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE FIZZANO CANNON          FILED: March 7, 2019

Fred Lohr and Jolene K. Fouse (together, the Fouses)[1] appeal the October 23, 2017 order of the Court of Common Pleas of Huntingdon County (trial court) denying the Fouses' petition to redeem property sold at an upset tax sale (Petition to Redeem) and holding that the Pennsylvania Real Estate Tax Sale Law's[2] (RETSL) lack of a post-tax-sale right of redemption does not violate either the Equal

---

[1] Saratoga Partners, L.P. (Bidder) notes that "[a]lthough [the Fouses] are consistently captioned as 'Fred Lohr & Jolene K. Fouse' throughout this appeal, it is [Bidder's] understanding that their names are Fred Lohr <u>Fouse</u> and Jolene K. Fouse." Bidder's Brief at 1 n.1 (emphasis in original). Further, we note that appellants identified themselves as "Fred Lohr Fouse and Jolene K. Fouse" before the trial court in their Brief in Support of their Petition to Redeem. *See* Petition to Redeem at 1.

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

Protection Clause of the United States Constitution or Article III of the Pennsylvania Constitution. Upon review, we affirm.

The Fouses are record owners[3] of two parcels of real property (the Property) located in Lincoln Township within Huntingdon County, a sixth class Pennsylvania county.[4] Petition to Redeem at 2; Trial Court Memorandum, 1/5/18 at 2. On or about September 26, 2016, the Huntingdon County Tax Claim Bureau (Tax Claim Bureau) conducted an upset tax sale of the Property pursuant to RETSL. Petition to Redeem at 2. Saratoga Partners, L.P. (Bidder) was the highest bidder at the sale and paid the Tax Claim Bureau a sum of $27,795.45 for the Property. *Id.* Despite the Property being sold pursuant to RETSL, on December 1, 2016, the Fouses filed their Petition to Redeem with the trial court, attempting to avail themselves of the post-tax-sale right of redemption contained in the Municipal Claims and Tax Liens Act (MCTLA).[5] Petition to Redeem at 1; Bidder's Brief at 1. In their Petition to Redeem, the Fouses claimed that, as "owner[s] of the Property,"

---

[3] As of December 1, 2016, the Fouses averred that "[t]o date, the sale conducted by the Huntingdon County Tax Claim Bureau has not been confirmed and Saratoga Partners has not been issued a deed for the Property." Petition to Redeem at 2.

[4] *See* AOPC: *County Classes*, available at http://www.pacourts.us/news-and-statistics/research-and-statistics/dashboard-table-of-contents/resources/WebHelp/General_Inform ation/County_Class.htm (last visited Jan. 9, 2019).

[5] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101–7505. Section 32 of the MCTLA provides as follows:

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale[.]

53 P.S. § 7293(a). However, RETSL, which governed the upset tax sale, provides that "[t]here shall be no redemption of any property after the actual sale thereof." Section 501(c) of the RETSL, 72 P.S. § 5860.501(c).

they "have the right to redeem [it] pursuant to [53 P.S. § 7293], and [to] extinguish any right, claim, or title held by Saratoga Partners upon payment of any actual costs incurred in connection to the sale." Petition to Redeem at 2. The Fouses also asked the trial court to "issue a [r]ule upon Respondent, Saratoga Partners to show cause why the relief requested . . . should not be granted and to issue an [o]rder to . . . the Tax Claim Bureau, to withhold any deed it intends to issue to Saratoga Partners until such time as the [r]ule [is] satisfied." *Id.* at 3. The Fouses filed a Brief in Support of their Petition to Redeem, arguing that RETSL's lack of a post-tax-sale right of redemption impinges on due process and equal protection rights under the United States Constitution and the Pennsylvania Constitution, in addition to violating the Uniformity Clause of the Pennsylvania Constitution. Brief in Support at 5. On October 23, 2017, the trial court issued an order denying the Fouses' Petition to Redeem, due to its finding that RETSL's lack of a post-tax-sale right of redemption does not violate either the Equal Protection Clause of the United States Constitution or Article III of the Pennsylvania Constitution.[6] Trial Court Order, 10/23/17.

The Fouses timely appealed[7] and filed a Statement of Errors Complained of on Appeal, alleging that "[t]he failure of [RETSL] to provide taxpayers with a redemption period violates both the Equal Protection Clause of the United State Constitution and Article III of the Constitution of the Commonwealth

---

[6] The Fouses did not provide a verbatim transcript of the proceedings giving rise to the appeal and claim one does not exist. Bidder contends that "some or all of [the Fouses'] appellate arguments are arguably waived." Bidder's Brief at 2 n.3 (citing *Smith v. Smith*, 637 A.2d 622, 623-24 (Pa. Super. 1993) (where appellant's failure to secure certified transcript of proceedings precludes meaningful appellate review of issue, issue is deemed waived)). However, this Court does not find that a verbatim transcript is necessary in the case *sub judice* for meaningful appellate review.

[7] The Fouses initially appealed to the Superior Court, which transferred the matter to this Court.

3

of Pennsylvania." Huntingdon County Prothonotary Docket Entries at 3; Statement of Errors Complained of on Appeal, 12/18/17.

On January 5, 2018, the trial court issued a memorandum stating the reasons for its October 23, 2017 order. Trial Court Memorandum, 1/5/18 at 1. The trial court held that the Fouses' equal protection challenge warranted rational basis review. *Id.* at 5 (citing *Curtis v. Kline*, 666 A.2d 265, 267-68 (Pa. 1995)). The trial court also found that "the dominant purposes of [RETSL] [are] to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." *Id.* (quoting *Povlow v. Brown*, 315 A.2d 375, 377 (Pa. Cmwlth. 1974)). The trial court noted its opinion that the desired post-tax-sale "equity of redemption . . . would . . . have the effect of making tax titles less attractive than they now are[,] . . . thus increasing the chance that the amounts bid at tax sales will be inadequate." *Id.* at 6 (quoting *Povlow*, 315 A.2d at 377 n.4). The trial court further opined that "[a] speedier, more efficient procedure that enhance[s] the quality of titles proffered at sale certainly promotes the [S]tate's interest in tax collection." *Id.* The trial court noted that Article III, Section 20 of the Pennsylvania Constitution "specifically permits classification by population." *Id.* Thus, the trial court held that the Fouses failed to establish that RETSL's lack of a post-tax-sale right of redemption contravenes the right to equal protection under the law. *Id.* at 6-7 (citing *Pa. Liquor Control Bd. v. The Spa Athletic Club*, 485 A.2d 732, 735 (Pa. 1984)).

Before this Court,[8] the Fouses argue that the trial court should have applied strict judicial scrutiny, rather than rational basis review, to determine

---

[8] In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Murphy v. Monroe Cty. Tax Claim Bureau*, 784 A.2d 878, 880 n.2 (Pa. Cmwlth. 2001).

whether RETSL's lack of a post-tax-sale redemption provision violates the Fouses' rights to due process and equal protection under the law.[9]  Fouses' Brief at 7-8.  The Fouses further contend that RETSL's lack of such a provision does not withstand even rational basis review.  *Id.* at 6 & 11.

As a preliminary matter, we note that the Fouses have waived their due process argument for failure to raise it in their statement of errors complained of on appeal.  Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii), "[i]ssues not included in the [s]tatement [of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa. R.A.P. 1925(b)(4)(vii); *see City of Philadelphia v. Lerner*, 151 A.3d 1020, 1024 (Pa. 2016) (reaffirming the "well-settled, bright-line rule" that "issues not raised in a Rule 1925(b) statement will be deemed waived" and holding that "[b]y failing to comply with Rule 1925(b), [the appellant] waived the issue that he . . . request[ed] [the] Court to address").  Accordingly, we will not address the Fouses' due process argument.

With respect to the Fouses' equal protection argument, we are mindful that "[a] statute duly enacted by the General Assembly is presumed valid[.]"  *W. Mifflin Area Sch. Dist. v. Zahorchak*, 4 A.3d 1042, 1048 (Pa. 2010).  "The party

___

The Tax Claim Bureau failed to file a brief as ordered by this Court and, therefore, was precluded from participating on appeal.  *See* Commonwealth Court Order, 9/17/18.

[9] In their Rule 1925(b) statement, the Fouses specified that they are pursuing an equal protection challenge under the United States Constitution.  However, before this Court, the Fouses appear to argue their equal protection claim under the Pennsylvania Constitution.  This discrepancy is immaterial, as "[t]he equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." *Jackson v. Commonwealth*, 143 A.3d 468, 476 n.12 (Pa. Cmwlth. 2016) (quoting *Love v. Borough of Stroudsburg,* 597 A.2d 1137, 1139 (Pa. 1991)); *see also Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 417 (E.D. Pa. 2016) (stating, "Pennsylvania's equal protection and due process provisions are coextensive with the corresponding provisions of the United States Constitution").

seeking to overcome the presumption of validity must meet a formidable burden." *Commonwealth v. Means*, 773 A.2d 143, 47 (Pa. 2001). "Legislation will not be invalidated unless it clearly, palpably and plainly violates the constitution and any doubts are to be resolved in favor of a finding of constitutionality." *Appeal of McNelly*, 553 A.2d 472, 476–77 (Pa. Cmwlth. 1989) (citing *Pa. Liquor Control Bd.*, 485 A.2d at 732.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The corresponding portions of the Pennsylvania Constitution provide as follows:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, § 1.

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

PA. CONST. art. I, § 26. "In analyzing [an] equal protection challenge to [a statute], we must first determine the appropriate level of judicial scrutiny to be applied." *Zauflik v. Pennsbury Sch. Dist.*, 72 A.3d 773, 790 (Pa. Cmwlth. 2013), *aff'd*, 104 A.3d 1096 (Pa. 2014) (citing *Smith v. City of Philadelphia*, 516 A.2d 306, 311 (Pa. 1986)). "Strict scrutiny of a legislative classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or

6

operates to the peculiar disadvantage of a suspect class." *Zauflik*, 72 A.3d at 790 (quoting *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976)) (internal quotation marks omitted). To survive strict scrutiny, a classification "must be justified by a compelling government interest and . . . must be strictly construed." *Id.* at 790-91 (citing *Smith*, 516 A.2d at 311). "If the classification involves an important government interest," then intermediate judicial scrutiny is applied to determine whether the classification "serve[s] important governmental objectives" and is "substantially related to the achievement of those objectives." *Id.* (quoting *Craig v. Boren*, 429 U.S. 190, 197 (1976)) (brackets omitted). "Finally, if the classification does not involve either fundamental rights, suspect classes, or sensitive or important government interests, it will be upheld if there is any rational basis for the classification." *Id.* (quoting *Smith*, 516 A.2d at 311) (internal quotation marks omitted).

The Fouses argue that the trial court erred in applying the rational basis level of scrutiny to determine whether RETSL's lack of a post-tax-sale redemption right violates their equal protection rights. Fouses' Brief at 7. The Fouses contend that RETSL's failure to provide residents of third[10] to eighth class counties with the opportunity to redeem property following a tax sale "infringes upon a 'fundamental right,'" such that "a reviewing court must apply the strict scrutiny test." Fouses' Brief at 8. The Fouses maintain that "[t]he Pennsylvania Constitution classifies the acquisition and possession of property as a fundamental right" implicating a strict scrutiny standard and assert that "[t]he classification of citizens based upon the

---

[10] The Fouses misstate the applicability of RETSL, which applies to counties of the second A to eighth class. *See* Section 102 of RETSL, 72 P.S. § 5860.102 (defining "County" as "a county of the second A, third, fourth, fifth, sixth, seventh or eighth class, including counties of these classes which have adopted or may adopt home rule charters under . . . the 'Home Rule Charter and Optional Plans Law[, 53 Pa.C.S. §§ 2901–2984]'").

7

population of the municipality in which they live does not serve a compelling governmental interest." *Id.* at 6. Specifically, the Fouses, citing *R. v. Department of Public Welfare*, 636 A.2d 142, 149 (Pa. 1994), reason that "reputational rights, which are mentioned in the same part of Article I, Section 1 . . . as property rights, are currently deemed 'fundamental' by our [S]tate's Supreme Court" and, therefore, property rights share equal stature. Fouses' Brief at 9. Further, the Fouses maintain that "if the right to be secure in one's home is a sacrosanct, inviolate, and fundamental right, so, then, is the right to acquire, possess, and protect the property on which the home is situated." *Id.* The Fouses also claim that the lack of a post-tax-sale right of redemption under RETSL "does nothing to advance the government's compelling interest in collecting taxes, and . . . is certainly not narrowly tailored to that end," such that "Pennsylvania's tax sale scheme cannot withstand strict scrutiny review." *Id.* at 11.

On the other hand, Bidder argues that the trial court's order should be affirmed because RETSL's lack of a post-tax-sale "redemption provision does not violate . . . the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution [or] the [c]orresponding [p]rovisions of the Pennsylvania Constitution[.]" Bidder's Brief at 4. Bidder asserts that the Fouses have mischaracterized the right at issue, but further contends that even if the Fouses' characterization were correct, "precedent unequivocally holds that one's right to hold and enjoy property is *not* a fundamental right, the derogation of which would invite strict scrutiny." *Id.* (emphasis in original) (citing *McSwain v. Commonwealth*, 520 A.2d 527, 530 (Pa. Cmwlth. 1987)). Bidder thus claims that the Fouses fail to meet their "heavy burden to overcome [RETSL's] presumption of constitutionality." *Id.* at 4 (internal citations omitted) (quoting *Appeal of McNelly*, 553 A.2d at 476).

8

In *McSwain*, this Court held that "the right to freely hold and dispose of one's property" is not a fundamental right. *McSwain*, 520 A.2d at 530. We noted that "[w]hile someone deprived of property is entitled to due process, due process is not synonymous with a fundamental right." *Id.* at 530. We concluded that the rational basis test is appropriate when addressing the right to hold and dispose of one's property. *See id.* at 531. Admittedly, *McSwain* does not concern the right of redemption, but rather involves an equal protection challenge to a city ordinance requiring all vacant dwellings to first pass housing code inspection prior to their rental, lease or occupation. *Id.* at 528. However, whether a particular statute accords a right of redemption directly implicates a property owner's ability to hold and use the property. Because the right to "freely hold and dispose of" property subsumes the Fouses' asserted right to post-tax-sale redemption, we find that the Fouses' equal protection challenge warrants rational basis review.[11]

Nonetheless, the Fouses argue that Pennsylvania's tax sale scheme "does not survive even rational basis scrutiny." Fouses' Brief at 11. The Fouses contend that "to survive rational basis scrutiny under Pennsylvania law, the disallowance of redemption under [RETSL], as opposed to [MCTLA] which allows redemption, must bear a substantial relation to the object of Pennsylvania's tax sale laws: the collection of delinquent taxes." *Id.* at 12. The Fouses assert that "[t]he infringement on the protected property rights of citizens living in [second A] through

---

[11] Although not addressed by the Fouses, we further note that the constitutional challenge *sub judice* warrants rational basis review because RETSL's distinction on the basis of county class, which is based on population, implicates neither a suspect class nor a sensitive classification. *See Wings Field Pres. Assocs., L.P. v. Dep't of Transp.*, 776 A.2d 311, 318-19 (Pa. Cmwlth. 2001) (evaluating an equal protection challenge to a state statute that only applied to "count[ies] of the second class A having a population in excess of 675,000 persons" under rational basis review); *see also Small v. Horn*, 722 A.2d 664, 672 nn.14 & 15 (Pa. 1998) (citations omitted) (suspect classes include race and national origin, and quasi-suspect classes, also referred to as "sensitive classifications" in Pennsylvania, include gender and legitimacy).

[e]ighth class counties does not bear any relationship to the ends of collecting delinquent taxes, let alone a substantial one[.]" *Id.* at 13. Bidder counters that "[t]he lack of a redemption provision in [RETSL] bears a 'fair and substantial' relationship to the legislative interest as expressed in the statute." Bidder's Brief at 11.

In applying the rational basis test, we must first "determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests." *Curtis*, 666 A.2d at 269. "Under the [E]qual [P]rotection [Clause][,] guarantees, distinctions and classifications in legislation are not prohibited, but must only bear some relationship to the ends to be achieved by the law." *McSwain*, 520 A.2d at 530 (citing *Stottlemyer v. Stottlemyer*, 329 A.2d 892 (Pa. 1974)). "[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). Further, equal protection principles "relate[] to equality between persons as such, rather than between areas and . . . territorial uniformity is not a constitutional prerequisite." *Id.* at 427. Thus, "[t]he prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary" and "rest upon some ground of difference which justifies the classification and has a fair and substantial relationship to the object of the legislation." *Curtis*, 666 A.2d at 267-68 (citations omitted). "A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification." *Curtis*, 666 A.2d at 268 (citations omitted). "'Fair and substantial' means that the

10

classification must be reasonable and not arbitrary, and the classification must rest upon some ground of difference which has a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike." *Appeal of McNelly*, 553 A.2d at 476 (quoting *Kroger Co. v. O'Hara Twp.*, 392 A.2d 266 (Pa. 1978)). Thus, "a legislative classification need bear only a rational relationship to the object sought to be achieved by the law, and will be overturned only if it rests on grounds wholly irrelevant to the achievement of the state's purpose." *McSwain*, 520 A.2d at 530 (citing *McGowan*, 366 U.S. at 425).

When applying "the rational basis test . . . [to an] equal protection . . . challenge[] . . . , a court must uphold a statute as rational if it can conceive of any plausible reason for the statute." *Peake v. Commonwealth*, 132 A.3d 506, 519 n.15 (Pa. Cmwlth. 2015) (internal citation and quotation marks omitted). Thus, when considering an equal protection challenge, "the reviewing court is free to hypothesize reasons the legislature might have had for the classification[,]" and "[i]f the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction." *Curtis*, 666 A.2d at 268. As we have held previously,

> [t]he problems of government are practical ones and may justify, if they do not require, rough accommodations[]— illogical, it may be, and unscientific. . . . We do not wish to inhibit state experimental classifications in . . . practical and troublesome area[s], but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose.

*Strong v. County of Erie*, 552 A.2d 350, 353–54 (Pa. Cmwlth. 1989) (quoting *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69–70 (1913)). Moreover,

11

[i]t is not necessary that the rational basis for a classification be set forth in the statute or in the legislative history. Nor is it necessarily incumbent upon the government agency to advance the reasons for the act in defending the classification. The burden must remain upon the person challenging the constitutionality of the legislation to demonstrate that it does not have a rational basis. Should the reviewing court detect such a basis, from whatever source, the legislation must be upheld.

*Pa. Liquor Control Bd.*, 485 A.2d at 735.

The question of whether RETSL's lack of a post-tax-sale redemption provision contravenes equal protection guarantees has not yet been squarely addressed by a Pennsylvania court.[12] Nevertheless, we hold that RETSL's lack of a post-tax-sale right of redemption provision does not violate the right to equal protection under the law. The Supreme Court of Pennsylvania has declared that "the purpose of tax sales [under RETSL] is not to strip the taxpayer of his property but to [e]nsure the collection of taxes." *Tracy v. Chester Cty., Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985) (quoting *Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950)). Further, this Court has held that "[t]he dominant purpose of [RETSL] is to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of title of the property sold at a tax sale." *Pacella v. Washington Cty. Tax Claim Bureau*, 10 A.3d 422, 428 (Pa. Cmwlth. 2010). Thus, it is established that RETSL promotes a legitimate government interest. Further, we find the General Assembly's classification—withholding the right of post-tax-sale redemption from

_____

[12] This question has reached this Court previously but was not decided for different reasons. *See Liggett v. Tax Claim Bureau Fayette Cty.* (Pa. Cmwlth., No. 2099 C.D. 2012, filed Feb. 17, 2015) (holding appellants waived their equal protection claim); *Lewicki v. Washington Cty.* (Pa. Cmwlth., No. 2371 C.D. 2013, filed Dec. 4, 2014) (finding appellants waived their equal protection challenge); *Battisti v. Tax Claim Bureau of Beaver Cty.*, 76 A.3d 111, 114 (Pa. Cmwlth. 2013) (declining to reach the equal protection claim and remanding the matter to the trial court for an evidentiary hearing).

property owners in second A through eighth class counties under RETSL while according such a right to property owners in first and second class counties under the MCTLA—bears a rational relation to the governmental objective. As we are "free to hypothesize reasons the legislature might have had for the classification," *Curtis*, 666 A.2d at 268, we posit that Pennsylvania's first and second class counties[13] have larger pools of prospective buyers at tax sales. These larger pools of prospective buyers make it more likely that a property will be sold at a tax sale. Under these circumstances, the need for owner protection is greater, and that need is met by the equity of redemption in the more populous counties. Further, as these counties have a higher population and, therefore, a larger taxable base from which to derive revenue, the General Assembly could have reasoned that these counties can afford a less efficient process for collecting delinquent taxes by providing a post-tax-sale right of redemption.

As we are able to conceive of plausible reasons for the statute, and the legislative classification does not rest on grounds wholly irrelevant to the achievement of the state's purpose, we find that RETSL's lack of a post-tax-sale right of redemption provision satisfies rational basis review. *See Strong*, 552 A.2d at 353 (emphasis in original) (providing, "it [i]s not for the court to determine whether *in fact* the [challenged statute] would promote legitimate governmental purposes but whether the '[state] [l]egislature *could rationally have decided*' it would") (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466

---

[13] Philadelphia County and Allegheny County, respectively. *See* AOPC: *County Classes*, available at http://www.pacourts.us/news-and-statistics/research-and-statistics/dashboard-table-of-contents/resources/WebHelp/General_Information/County_Class.htm (last visited Jan. 9, 2019).

(1981)).[14]  Moreover, the "formidable" burden of persuasion rests on the Fouses alone, *see Means*, 773 A.2d at 47, and they have failed to present any evidence or any reason under the law establishing why RETSL does not pass constitutional muster.  *See Appeal of McNelly*, 553 A.2d at 476–77 (finding appellants "clearly failed to meet [their] burden" to establish that a statute violated their right to equal protection under the law, when "[t]hey . . . offered no evidence whatsoever to support their claim that there were no relevant distinctions or similarities between themselves and the Philadelphia and Pittsburgh school districts").

Accordingly, for the foregoing reasons, we affirm the trial court's decision to deny the Fouses' Petition to Redeem and its conclusion that RETSL's lack of a post-tax-sale right of redemption provision does not violate the right to equal protection under the law.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[14] *See, e.g.*, *Leonard v. Thornburgh*, 489 A.2d 1349, 1352-53 (Pa. 1985) (holding that a statute providing for a lower wage tax cap on non-residents of the City of Philadelphia (City) than on residents of the City did not impinge on equal protection rights and was based on a "legitimate distinction," because "non-resident wage earners utilize services provided by the  City . . . to a lesser extent than do residents," some services "are offered only to residents" and "residents of the [C]ity have recourse through their own elected representatives . . . in the event that they believe their tax rates are excessive"); *Appeal of McNelly*, 553 A.2d at 476 (holding that a law limiting a school employee residency requirement to school districts of the first class and first class A was "rationally related to legitimate governmental interests," as the school districts could "be distinguished on the basis of population, high unemployment, lack of adequate tax base, enhancement of the quality of employee performance and the general economic flow from local expenditures of employees' salaries"); *Strong*, 552 A.2d at 351-52 (holding that an ordinance setting the compensation for municipal tax collectors at a percentage of the assessed value of municipal property for which they would collect taxes but capping compensation for the tax collector of a particular township was rationally related to the legitimate governmental objectives of "[r]educing county costs and achieving uniformity among municipal tax collectors").

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Lohr and Jolene K. Fouse,          :
                    Appellants          :
                                        :
            v.                          :
                                        :
Saratoga Partners, L.P. and             :      No. 128 C.D. 2018
Huntingdon County Tax Claim Bureau      :

# O R D E R

AND NOW, this 7th day of March, 2019, the October 23, 2017 order of the Court of Common Pleas of Huntingdon County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Lohr and Jolene K. Fouse,    :
          Appellants     :
                        :
                        :   No. 128 C.D. 2018
         v.               :
                        :   Argued:  December 11, 2018
Saratoga Partners, L.P. and    :
Huntingdon County Tax Claim Bureau  :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED:  March 7, 2019


Fred and Jolene Fouse had their property sold at an upset tax sale due to delinquent taxes that they owed.  If the property was located in Philadelphia County or Allegheny County, counties that proceed solely and exclusively under the Municipal Claims and Tax Liens Act (MCTLA),[1] the Fouses would have possessed a right to redeem their property "within nine months from the date of the acknowledgment of the sheriff's deed . . . upon payment of the amount bid at such sale[.]"  Section 32(a) of the MCTLA, 53 P.S. §7293(a).[2]  However, the Fouses'

---

[1] Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§7101-7505.

[2] There is an exception for the City of Pittsburgh, where tax sales are governed by the Second Class City Treasurer's Sale and Collection Act, Act of October 11, 1984, P.L. 876, *as amended,* 53 P.S. §§27101-27605 (Treasurer's Act).  Under section 304 of the Treasurer's Act, the owner of the property "may redeem the property by payment of the full amount of the claims for which the property was sold . . . [w]ithin 90 days after the date of the treasurer's sale."  53 P.S. §27304.

place of residence and the property is sited in Huntingdon County, a sixth class county, and the Real Estate Tax Sale Law (RETSL)[3] applies to this county. *See* sections 102 and 201 of the RETSL, 72 P.S. §§5860.102 (defining "county" in pertinent part as "a county of the second A, third, fourth, fifth, sixth, seventh or eighth class[.]"), 201 ("[A] Tax Claim Bureau is hereby created in each county in the office of the county commissioners."). Unlike the MCTLA, under the RETSL, "[t]here shall be no redemption of any property after the actual sale thereof." Section 501(c) of the RETSL, 72 P.S. §5860.501(c).

The Fouses contend that the inclusion of a post-sale right to redemption in the MCTLA, and the exclusion of such a right from the RETSL, violate principles of equal protection. "[I]n evaluating this question, we employ the rational basis test, under which a statutory classification will be upheld so long as it bears a reasonable relationship to accomplishing a legitimate state purpose." *Commonwealth v. Duda*, 923 A.2d 1138, 1151 (Pa. 2007).

Our case law indicates that there are no significant substantive or procedural differences between the RETSL and the MCTLA, except for the automatic right to redemption in the MCTLA. In *City of Allentown v. Kauth*, 874 A.2d 164 (Pa. Cmwlth. 2005), this Court explained that "[t]he RETSL's mechanisms for upset and judicial sales are virtually identical to those in the MCTLA." *Id.* at 166. We observed that "[t]he MCTLA and RETSL . . . permit, through strikingly similar and parallel mechanisms, a taxing authority to expose a delinquent property for an upset sale and, in the absence of receiving the upset price by which to satisfy the delinquent taxes and claims, a 'free and clear' judicial sale." *Kauth*, 874 A.2d at 168-69. Indeed, "the two statutes are very similar and operate concurrently with one another"

---

[3] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§5860.101-5860.803.

and are essentially one and the same; although they are technically two different statutes, both contain "procedures for the resolution of the same disputes[.]" *Kauth*, 874 A.2d at 169. Additionally, "[w]hether the judicial sale is effected under the MCTLA or the RETSL the intent of the legislature is the same: to return real property to productive use under new ownership." *Kauth*, 874 A.2d at 169 (emphasis added).

Against this background, the Majority discerns a rational basis for the General Assembly's differential classification of the RETSL and MCTLA by focusing on the fact that Pennsylvania's first and second class counties, Philadelphia County and Allegheny County, have greater populations than the other counties. From this, the Majority posits that Philadelphia County and Allegheny County "have larger pools of prospective buyers at tax sales," which "make it more likely that a property will be sold at a tax sale." Maj. slip op. at 13. Therefore, according to the Majority, "the need for owner protection is greater" and this "need is met" with the right of redemption found in the MCTLA. Maj. slip op. at 13. The Majority also asserts that, by virtue of having comparatively higher population figures, Philadelphia County and Allegheny County contain "a larger taxable base from which to derive revenue" and, as such, "the General Assembly could have reasoned that these counties can afford a less efficient process for collecting delinquent taxes by providing a post-tax-sale right of redemption." *Id.*

However, the justifications conceived by the Majority are refuted and rendered implausible in light of section 39.5 of the MCTLA,[4] which provides that "[t]he tax claim bureaus of the several counties may adopt and use the procedures set forth in this act in addition to the procedures set forth in the [RETSL]." 53 P.S.

---

[4] Added by section 8 of the Act of August 14, 2003, P.L. 83.

§7193.5. Since the counties that are covered under the RETSL, including the least populous eighth class county, can elect to use the additional and alternative procedure of the MCTLA, along with its right of redemption, there is no apparent basis relating specifically to differences in population that would rationalize excluding the right of redemption from the RETSL. *See Shapiro v. Thompson*, 394 U.S. 618, 639 (1969) (rejecting proffered justification for a statute where the justification was "completely refuted by the legislative history");[5] *see also United States v. Carolene Products Co.*, 304 U.S. 144, 152 (1938) (stating that "the existence of facts supporting the legislative judgment is to be presumed . . . unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption"). Hence, contrary to the stance of the Majority, the right of redemption seems to be wholly disconnected from the concept of population, some other characteristic unique to Philadelphia County or Allegheny County, or the ability or goal of collecting taxes in general.[6]

---

[5] *Shapiro* was overruled in part on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974).

[6] This point is buttressed by the fact that, under the Treasurer's Act, residents in the City of Pittsburgh, the largest municipality in Allegheny County, can only redeem property within 90 days or three months after the date of the treasurer's sale, 53 P.S. §27304, while residents of the smaller townships and boroughs of Allegheny County have a guaranteed right to redeem property within nine months of acknowledgement of the sheriff's deed—which occurs after the sale has been consummated—under the MCTLA, 53 P.S. §7293(a). *See Brentwood Borough School District v. HSBC Bank USA*, 111 A.3d 807, 808-10 and n.2 (Pa. Cmwlth. 2015) (explaining that the Treasurer's Act applies to the City of Pittsburgh, and not to the Borough of Brentwood, which is located in Allegheny County just outside the City of Pittsburgh, and analyzing the right of redemption under the MCTLA for a tax sale conducted in connection with property located in the Borough of Brentwood). If there were a positive correlation between population size and the right of redemption, then, ostensibly, the residents of Pittsburgh would have at least the same amount of time to redeem property as the surrounding townships and boroughs that are located in Allegheny County.

In this vein, I view the right of redemption as a personal, individual right that provides a homeowner with an extra or final chance to reclaim property following the completion of an upset tax sale or judicial sale. While the General Assembly unconditionally granted homeowners with property in Philadelphia County and Allegheny County such a right, it did not provide or expressly bestow this right upon any other homeowner of the other counties in the Commonwealth who fall within the ambit of the RETSL. It should be beyond dispute that, no matter where a homeowner resides, that homeowner shares the same interest in redemption as any other homeowner located anywhere else in the Commonwealth. In terms of equal protection, the federal and state constitutions "both reflect the principle that like persons in like circumstances must be treated similarly" and "a classification will be struck down if it is based upon artificial or irrelevant distinctions[.]" *Harrisburg School District v. Zogby*, 828 A.2d 1079, 1088-89 (Pa. 2003).

Upon review, I am simply unable to decipher how the exclusion of a right of redemption from the RETSL bears a reasonable relationship to a legitimate state purpose, or how the denial of this right promotes the purpose of classification based upon county size. Through its operation, the MCTLA grants a privilege and benefit upon one class of individuals as a matter of right and, apart from a mere preference for one group over another, I cannot ascertain why the General Assembly has not afforded the same right to the class of individuals covered under and subjected to the RETSL. Consequently, I would conclude that the RETSL fails the rational basis test and would declare that the statute, on its face, violates the rights of equal protection under the United States and Pennsylvania Constitutions. I, therefore, would enjoin enforcement of the RETSL and enter an order requiring all the counties in the Commonwealth to utilize the MCTLA (which they are already authorized to

do) as the sole procedure through which to conduct tax sales,[7] thereby ensuring that all the homeowners in this Commonwealth are treated alike and are vested with the right to redeem their property.[8]

Hence, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] This would be to the exclusion of the City of Pittsburgh, which would continue to conduct tax sales under the Treasurer's Act.

[8] *See Commonwealth v. Butler*, 328 A.2d 851, 860 (Pa. 1974) (Pomeroy, J., concurring) ("Where a statute denies equal protection by making an unconstitutional classification, the classification can be abolished by making the statute operate either on everyone or on no one," *quoting* Developments in the Law—Equal Protection, 82 HARV. L. REV. 1065, 1136-37 (1969)).